**EXEL TRANSPORTATION
SERVICES, INC., et
al., Plaintiffs,**

**v.**

**CSX LINES LLC, et al., Defendants.**

**Civil Action No. H–02–60.**

United States District Court,
S.D. Texas.

Aug. 7, 2003.

John W. Havins, Houston, TX, for Plaintiff.

Frank A. Monago, Houston, TX, for Defendant.

Opinion on Summary Judgment

HUGHES, District Judge.

1. *Introduction.*

A shipper contracted with a freight forwarder to deliver several shipments of cargo to Hawaii. The shipper paid the forwarder, but the forwarder did not pay the carrier. The shipper asks for a declaration that it does not have to pay for the shipments again. The carrier counter claims for the money owed it. The shipper falls under none of the legally recognized exceptions to the obligation to pay the carrier and is liable for the carrier's unpaid charges.

2. *Background.*

Marriott International was renovating a hotel in Hawaii and had multiple cargo shipments that it needed delivered to the hotel site. Marriott used Exel Transportation Services as its freight forwarder. Exel then contracted with a second freight forwarder, Cab Logistics, which hired CSX Lines to transport the cargo.

CSX began shipping the cargo and released it in Hawaii to Marriott Resorts, the consignee. CSX says it did not demand payment on delivery because it relied on Marriott's previously-established credit. Although Exel was paying Cab for the shipments, Cab was not forwarding the payments to CSX.

As it had done with Marriott's earlier shipments through previous freight forwarders, CSX billed Marriott directly for the initial shipments. Marriott complained to Exel, which contacted CSX and told it to bill Cab directly.

CSX's tariff—which the invoice incorporates—makes the shipper, consignee, holder of the bill of lading, and owner of the goods jointly and severally liable for payment. Marriott was listed as both the owner and consignee on the invoices.

When Cab stopped paying, CSX sent two past due notices directly to Marriott. It also communicated with Cab and Exel hoping to resolve the problem. Finally, CSX held cargo containers in Hawaii until Marriott directly paid part of the accrued debt. Despite this payment, CSX was never paid almost $300,000 in shipping charges.

3. *Reallocation.*

Shippers are usually liable for payments, but the parties can reallocate this responsibility either explicitly by agreement or implicitly through their actions. *See Mo. Pac. R.R. Co. v. Ctr. Plains Indus., Inc.,* 720 F.2d 818, 819 (5th Cir.1983). CSX sent all invoices to Cab and looked directly to Cab for payment once it was told to stop billing Marriott. CSX originally sent invoices to Marriott because it understood that Marriott was ultimately responsible for payment. CSX's compliance with Exel's request to stop sending invoices did not release Marriott or Exel from responsibility for the bills.

Because Marriott was always listed as both the shipper and consignee on the invoices, it was not released from its responsibility to pay. Marriott's liability for payments did not end when it stopped receiving the bills. It never asked for exemption from liability, and CSX never intended to release it.

4. *Misrepresentation.*

If a shipper has already paid a forwarder, a carrier can be equitably es-

topped from recovering shipping fees if it misrepresents a material fact to the shipper's detriment. *See S. Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 351, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982). Exel argues that CSX misled it into believing that Cab had paid the shipping bills because CSX did not immediately notify it of Cab's delinquency. Exel does not explain why CSX had a duty to contact Marriott when it was explicitly asked to bill only Cab.

CSX did not misrepresent Cab's payment status. CSX sent multiple past-due notices to Marriott. These notices were somewhat delayed because CSX allowed thirty days for payment and because Cab told CSX that it was working on the payment problem. After the 30–day cushion, it is reasonable to allow several days for administrative friction before Marriott, Exel, or Cab received word that payments were late. Given this time frame, Marriott was properly notified as payments became overdue. Lag time is not a lie; the delay between Cab's missed payments and notification to Exel was not a representation that Cab's payments were satisfactory.

Had Marriott responded to the first past-due notice in October 2001, it would have recognized that Cab was not paying its bills. Marriott was negligent in not investigating the problem when it was first informed.

5. *Privity.*

■ Exel argues that it cannot be liable to CSX because they were never in privity of contract. Exel claims neither it nor Marriott were Cab's principal; rather, Cab was acting as an independent contractor. Exel believes that if Cab was an independent contractor, it is not liable for Cab's failure to pay CSX, because contracts bind only the contracting parties. Since Exel was neither Cab's principal nor in privity

with CSX, it feels it is absolved of responsibility, but Cab's status as an independent contractor does not release Exel from liability. The bill of lading and CSX's tariff made the shipper and consignee liable no matter what their relationship with the carrier.

6. *Conclusion.*

The bedrock rule of carriage cases is that, absent malfeasance, the carrier gets paid. It is superficially unfair that Exel and Marriott must pay for the shipments twice. However, allowing them the benefit of carriage without compensating the carrier would eventually cripple the shipping industry, and the economy generally, as carriers devoted their time to investigating potential customers. The entire point of the tariff regime—promoting commerce by removing shippers' credit-worthiness from a carrier's list of concerns—would be eviscerated.

CSX's tariff indicated Marriott's liability as shipper and consignee. CSX neither released Exel from liability nor misrepresented Cab's payments. It is Exel's responsibility to choose a subcontractor that can forward money as well as freight; it is not CSX's responsibility to investigate every company that wants to ship goods at CSX's tariff rates. Marriott and Exel are liable for CSX's unpaid shipping charges.

Final Judgment

1. Cab Logistics, Inc., was served with process and has not appeared to defend this action. A default is entered against it.

2. The plaintiffs' motion for summary judgment is denied (37).

3. Exel, Marriott International, Marriott Hotel Services, and Cab Logistics, Inc., are jointly and severally liable to CSX

for the charges incurred shipping the cargo to Hawaii (38).